1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10    JASON SCOTT HOUNIHAN,                    Case No. 1:23-cv-00163-KES-EPG (PC)

11                    Plaintiff,               FINDINGS AND RECOMMENDATIONS,
                                               RECOMMENDING THAT:
12           v.
                                               (1) PLAINTIFF'S MOTION FOR SUMMARY
13    JOSE C. VILLASENOR,                           JUDGMENT (ECF NO. 52) BE DENIED

14                    Defendant.               (2) DEFENDANT'S MOTION FOR
                                                   SUMMARY JUDGMENT (ECF NO. 68)
15                                                 BE GRANTED

16                                             (3) DEFENDANT'S REQUEST FOR
                                                   JUDICIAL NOTICE BE DENIED (ECF
17                                                 NO. 68-4)

18                                             (4) PLAINTIFF'S OBJECTIONS TO
                                                   DEFENDANT'S DECLARATION (ECF
19                                                 NO. 64) BE OVERRULED

20                                             (5) THE SEALED EXHIBITS (ECF NO. 75-1)
                                                   BE UNSEALED
21
                                               OBJECTIONS, IF ANY, DUE WITHIN
22                                             THIRTY DAYS

23

24           Plaintiff Jason Scott Hounihan is a state prisoner proceeding *pro se* and *in forma pauperis*

25    in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 4). This case proceeds on

26    Plaintiff's claim that Defendant Jose C. Villasenor, a correctional officer at the Tulare County

27    Sheriff's Office, sexually assaulted him in violation of the Eighth Amendment by instructing a

28    medical professional to conduct a rectal search on Plaintiff even though a doctor stated that an x-

                                               1

1  ray revealed there was no contraband in Plaintiff's body. (ECF No. 5).

2      Both parties now move for summary judgment. (ECF Nos. 52, 68). Generally, Plaintiff

3  argues that Defendant has already admitted in his filings to violating his constitutional rights and

4  that the undisputed evidence shows that Defendant ordered the rectal search for personal reasons.

5  (ECF No. 52). Generally, Defendant argues that it was a doctor—not Defendant—who made the

6  decision to conduct the rectal search and the rectal search was ultimately carried out for legitimate

7  reasons, *i.e.*, determining whether Plaintiff had introduced drugs into the jail and for Plaintiff's

8  own safety.

9      For the reasons explained below, it is recommended that: (1) Plaintiff's motion for

10  summary judgment (ECF No. 52) be denied; (2) Defendant's motion for summary judgment

11  (ECF No. 68) be granted; (3) Defendant's request for judicial notice (ECF No. 68-4) be denied;

12  (4) Plaintiff's objections to Defendant's declaration (ECF No. 64) be overruled; and (5) the sealed

13  exhibits (ECF No. 75-1) be unsealed. The parties may file objections within thirty days as

14  specified at the end of these findings and recommendations.

**I.    BACKGROUND**

15      **A.    Plaintiff's Complaint**

16      Plaintiff's verified complaint alleges[1] that he was sexually assaulted. (ECF No. 1).

17  Specifically, he says that he was taken to the hospital to have an x-ray to see if he had contraband

18  in his body. Although the doctor clearly stated that there were no foreign objects in his body,

19  Defendant instructed a medical professional,[2] later identified as Dr. Elvin Diaz, to stick his hands

20  up Plaintiff's rectum.

21      Liberally construing Plaintiff's complaint at screening, the Court concluded "that

22  Plaintiff's Eighth Amendment sexual assault claim against [D]efendant Villasenor should proceed

23  past screening." (ECF No. 5, p. 6).

24  \\\

---

[1] *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56 . . . [if it is] based on personal knowledge and set forth specific facts admissible in evidence.").

[2] Although Plaintiff described the medical professional as a "male nurse" in his complaint, it now appears undisputed that the medical professional was Dr. Elvin Diaz. (ECF No. 68-1, p. 6; ECF No. 75, pp. 14, 17).

**B.    Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment contends that Defendant, through his filings, has already admitted to violating his constitutional rights. (ECF No. 52). Mainly, Plaintiff points to Defendant's affirmative defenses in his answer. For example, Plaintiff cites Defendant's nineteenth affirmative defense—"that at no time relevant to this litigation was the Due Process Clause of the United States Constitution implicated because the conduct of this Defendant was, at most, a mere negligent act of an official causing unintended loss of or injury to life, liberty or property"—and asserts that this is an admission that Defendant was "negligent" and that he violated Plaintiff's constitutional rights. (ECF No. 52, pp. 20-21; *see* ECF No. 13, p. 6).

Additionally, Plaintiff contends that the undisputed facts show that Defendant ordered a rectal search without any legitimate reason after an x-ray revealed he had no contraband in his body. Specifically, Plaintiff provides the following narrative of events in his motion for summary judgment. (ECF No. 52, p. 17). Plaintiff states that Defendant removed him from his jail cell and conducted a body scan. He was then placed in an observation room while Defendant obtained a search warrant. He was then transported to Kaweah Health Medical Center and x-rayed. Dr. Jing Liu examined the x-ray and told Defendant that he was clear and there were no foreign objects in his body. Defendant pointed out an area on the scan result and Dr. Liu told him that it was just air. However, Defendant "instructed them to clear [Plaintiff] anyway." Doctor Diaz than lubricated his gloved hands and inserted his hands into Plaintiff's rectum.

In support of his motion for summary judgment, Plaintiff attaches the underlying warrant documents, excerpts from Defendant's scheduling and discovery statement, and excerpts from Defendant's answer.

Defendant opposes the motion, arguing that he disputes some of Plaintiff's alleged facts and that Plaintiff has not produced sufficient evidence to support his narrative. (ECF No. 57). Defendant disputes that he has admitted liability in any of his filings, stating that his nineteenth affirmative defense (quoted above) was not an admission that he acted negligently. Further, Defendant provides his own evidence supporting that he did not order the rectal search, which was ultimately conducted for legitimate reasons.

Defendant states that Plaintiff was booked at the adult pretrial facility on October 27,

3

2022. The next day, two inmates were found to have possibly overdosed on an unknown substance and nurses who responded to the situation also required medical attention. Defendant investigated the matter and determined that Plaintiff had likely introduced fentanyl to the jail. Additionally, Defendant personally knew that Plaintiff had been known to hide contraband in his rectum in the past.

Defendant removed Plaintiff from his cell and conducted a body scan, seeing what appeared to be a mass inside of Plaintiff's body. Plaintiff was placed in a holding cell while Defendant obtained a search warrant for an x-ray, and if necessary, a body cavity search of Plaintiff. Defendant took Plaintiff to Kaweah Health Medical Center and provided the search warrant to the doctor and an x-ray was taken. After the x-ray was completed, one of the doctors (Dr. Liu and Dr. Diaz were present) said that an x-ray was not always conclusive in determining if a person had objects in his body. Dr. Diaz then conducted a rectal search using lubrication based on one of the doctor's professional concern for the safety of Plaintiff and given the risk of exposure to other persons. The search lasted no more than 3-4 minutes. Dr. Diaz removed a smiley face sticker from Plaintiff's rectum, which Defendant contends is known to be part of drug packaging.

After Plaintiff was transported back to the jail, Defendant searched his cell and located what appeared to be drugs in Plaintiff's mattress. A toxicology test determined that the substance was fentanyl.

Defendant contends that he never touched Plaintiff sexually or ordered anyone else to touch Plaintiff sexually. Further, Defendant contends that it was the doctors who decided to perform the rectal search. In support of his opposition, Defendant provides his declaration.

Plaintiff has filed a reply maintaining that Defendant, through his filings, has admitted liability. (ECF No. 61). Further, Plaintiff contends that it was ultimately Defendant's decision, not any doctor's, to proceed with the rectal search. Moreover, Plaintiff asserts that the rectal search "was a sexual assault because there was no reason for it"; rather, it was due to Defendant's personal feelings. (*Id.* at 4). Plaintiff concedes a smiley face sticker was found during the search but states that it came from his boxer shorts and was not inside his rectum.

4

In support of his reply, Plaintiff submits his own purported declaration[3] where he essentially repeats his narrative from his motion for summary judgment.

### C.   Defendant's Motion for Summary Judgment

The parties' positions are materially the same in their briefing on Defendant's motion for summary judgment. Defendant maintains in his motion for summary judgment that he never ordered any person to touch Plaintiff in a sexual manner and that there were legitimate reasons for the rectal search.[4] (ECF No. 68). Defendant supports his motion for summary judgment with various attachments, including medical records, Defendant's declaration, and excerpts from Plaintiff's deposition and Dr. Liu's deposition.

Plaintiff has filed an opposition to Defendant's motion for summary judgment, in which he maintains that Defendant ordered the rectal search and that Defendant was motivated by "personal" reasons. (ECF No. 75). Plaintiff attaches, among other things, discovery documents, medical records, and search warrant documents in support of his opposition.

Defendant has filed a reply, which repeats his arguments in favor of summary judgment. (ECF No. 78-1). In support, Defendant attaches additional excerpts from Dr. Liu's deposition transcript.

## II.   LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,

---

[3] A valid declaration can support a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). However, the Court notes that the declaration is not signed or dated under penalty of perjury as required by 28 U.S.C. § 1746. *See Sessing v. Sherman*, No. 1:13-CV-01684-LJO-MJS (PC), 2016 WL 6500219, at *3 (E.D. Cal. Nov. 1, 2016) ("Unsigned declarations will be stricken, and declarations not signed under penalty of perjury have no evidentiary value."). However, even assuming that this declaration has evidentiary value, Defendant is still entitled to summary judgment for the reasons identified below.
[4] Defendant also argues that he is entitled to qualified immunity. (ECF No. 68-1). Because there are other grounds to grant Defendant summary judgment, the Court will not address this issue.

5

1
2

> interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

3   Fed. R. Civ. P. 56(c)(1)(A)-(B).

4          A party moving for summary judgment "bears the initial responsibility of informing the

5   district court of the basis for its motion, and identifying those portions of 'the pleadings,

6   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7   any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

8   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-

9   moving party bears the burden of proof at trial, the moving party need only prove that there is an

10  absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627

11  F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-

12  moving party to designate specific facts demonstrating the existence of genuine issues for trial,"

13  which is not a light burden, the party "must come forth with evidence from which a jury could

14  reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby,*

15  *Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the

16  plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

17  find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the

18  nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

19  Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory

    allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

20         In reviewing the evidence at the summary judgment stage, the Court "must draw all

21  reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros*

22  *de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only

23  draw inferences, however, where there is "evidence in the record . . . from which a reasonable

24  inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact.

25  *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the non-movant is to be

26  believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment motion, the Court may

27  consider other materials in the record not cited to by the parties but is not required to do so. Fed.

28  R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir.

1    2001).

2    **III.    DISCUSSION**

3        **A.    Preliminary Issues**

4        Before turning to the merits, the Court addresses three preliminary issues raised in the

5    briefing: (1) Defendant's request for judicial notice (ECF No. 68-4); (2) Plaintiff's objections to

6    Defendant's declaration (ECF No. 64); and (3) sealed exhibits (ECF No. 75-1).

7           **1.    Defendant's request for judicial notice**

8        Defendant asks this Court to take judicial notice of various filings in federal cases (and a

9    state court case) involving Plaintiff. (ECF No. 68-4).

10       "The court may judicially notice a fact that is not subject to reasonable dispute because it:

11   (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

12   readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

13   201(b). Documents that are part of the public record may be judicially noticed to show, for

14   example, that a judicial proceeding occurred or that a document was filed in another court case,

15   but a court may not take judicial notice of findings of facts from another case. *See Wyatt v.*

16   *Terhune*, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), *overruled on other grounds by Albino v.*

17   *Baca*, 747 F.3d 1162 (9th Cir. 2014) (*en banc*); *see also Kessler v. Bishop*, No. C 08-5554 PJH,

18   2011 WL 207981, at *3 (N.D. Cal. Jan. 21, 2011) ("Thus, while the court may take notice of the

19   fact of plaintiff's grievance proceedings before the university, and the fact of the outcome, the

20   court declines to take judicial notice of grievance proceedings for the truth of any allegations or

21   statements contained therein."). Moreover, a court should not take judicial notice when the

22   underlying facts are irrelevant. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir.

23   1998).

24       Here, the Court will recommend that Defendant's request for judicial notice be denied

25   because Defendant provides no developed argument to show that any facts are properly subject to

26   judicial notice or that any facts from the records are relevant to the issues before the Court.[5]

            **2.    Plaintiff's objections to Defendant's declaration**

27   _____

28   [5] Presumably, these records are offered to support Defendant's contention that Plaintiff only filed this lawsuit in retaliation for criminal charges he received based on the underlying events. (ECF No. 68-1, pp. 8-9).  However, Defendant does not move for summary judgment on that basis.

Plaintiff has filed objections to Defendant's declaration that was submitted in support of Defendant's opposition to Plaintiff's motion for summary judgment. (ECF No. 64). Plaintiff labels the declaration a "sham" and points to various purported inconsistencies between the affidavit and Defendant's previous filings. For example, he notes that the declaration admits to authoring a search warrant and deems this inconsistent with Defendant's denial that he ultimately ordered the rectal search. (*Id.* at 2). Plaintiff appears to be invoking the sham affidavit rule, which has been described as follows: "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This rule has its limitations:

> More specifically, we have fashioned two important limitations on a district court's discretion to invoke the sham affidavit rule. First, we have made clear that the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony," *Kennedy*, 952 F.2d at 266–67; rather, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* at 267. Second, our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. Thus, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir.1995).

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009).

Here, Plaintiff points to no factual inconsistencies between Defendant's declaration and any prior testimony. Rather, Plaintiff's arguments are based on his own view of the record. For example, he asserts that because Defendant obtained a search warrant that authorized a body cavity search, it obvious that Defendant ordered the doctors to perform a rectal search. However, while Defendant acknowledges that he obtained a warrant, he says that he never actually ordered anyone to perform the rectal search; rather, Dr. Liu independently made this decision. Plaintiff may disagree with this assertion, but that does not make it a sham declaration.

Accordingly, the Court will recommend that Plaintiff's objections (ECF No. 64). to Defendant's affidavit be overruled.

\\\

8

### 3.      Sealed exhibits

As noted in the Court's March 21, 2024 minute order, "[t]he exhibits to Plaintiff's opposition include documents that appear to have been deemed confidential and subject to sealing by a Superior Court Judge in the County of Tulare." (ECF No. 76). The Court *sua sponte* sealed the exhibits and directed each party to file a statement regarding whether the documents should remain sealed. Defendant filed a statement requesting that the Court only keep under seal pages 6-7 of ECF No. 75-1; these pages contain a copy of the statement of probable cause for the search warrant. (ECF No. 77). Plaintiff filed a statement requesting that the document be unsealed, generally indicating that the information in the document is out in the open, presumably in his criminal case. (ECF No. 79). Upon review, the Court will recommend that Exhibit 75-1 be unsealed.

The public has a general right to inspect judicial records and compelling reasons are required "to outweigh the public's interest in disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Here, there is no dispute that Plaintiff has been charged with criminal counts in the Tulare County Superior Court. (ECF No. 68-1, p. 6; ECF No. 68-2, p. 139-42). Because Plaintiff has been charged with crimes, Ninth Circuit caselaw supports unsealing the documents which relate to the search warrant. *See United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1193–94 (9th Cir. 2011) (noting that post-investigation warrant materials have historically been available to the public and generally search warrant applications are unsealed in connection with post-indictment discovery).  Accordingly, the Court finds no compelling reasons to keep the records under seal.

### B.      Legal Standards

Sexual harassment or abuse of an inmate by a prison official violates the Eighth Amendment.[6] *Wood v. Beauclair*, 692 F.3d 1041, 1046, 1051 (9th Cir. 2012) (citing *Schwenk v.*

---

[6] Although the parties cite to Eighth Amendment standards for this claim, the Court notes that Plaintiff was booked at the pretrial facility shortly before the rectal search, which could mean that he was a pretrial detainee and not a convicted prisoner at the time of the rectal search. Although this could mean that the Fourteenth Amendment standards apply to this claim, it would not change the analysis because "[t]he Fourteenth Amendment [likewise] plainly forbids a sexual assault by a guard on a pretrial detainee." *Powell v. Cnty. of Orange*, No. 8:21-CV-00801-JVS (DFMx), 2022 WL 3574282, at *7 (C.D. Cal. July 7, 2022).

*Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)).  In evaluating such a claim, "courts consider

whether 'the official act[ed] with a sufficiently culpable state of mind'"—the subjective

component—"and if the alleged wrongdoing was objectively 'harmful enough' to establish a

constitutional violation"—the objective component. *Wood*, 692 F.3d at 1046 (alteration in

original) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). As "sexual assault serves no valid

penological purpose . . . where an inmate can prove that a prison guard committed a sexual

assault, we presume the guard acted maliciously and sadistically for the very purpose of causing

harm, and the subjective component of the Eighth Amendment claim is satisfied." *Bearchild v.*

*Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020) (citing *Wood*, 692 F.3d at 1050; *Schwenk*, 204 F.3d

at 1196 n.6). "Any sexual assault is objectively 'repugnant to the conscience of mankind' and

therefore not *de minimis* for Eighth Amendment purposes." *Bearchild*, 947 F.3d at 1144 (quoting

*Hudson*, 503 U.S. at 10).

> [A] prisoner presents a viable Eighth Amendment claim where he or she proves
> that a prison staff member, acting under color of law and without legitimate
> penological justification, touched the prisoner in a sexual manner or otherwise
> engaged in sexual conduct for the staff member's own sexual gratification, or for
> the purpose of humiliating, degrading, or demeaning the prisoner.

*Bearchild*, 947 F.3d at 1144.

### C.    Whether Defendant Ordered the Rectal Search

The parties agree on many of the material facts--specifically that there was an

investigation concerning whether Plaintiff was responsible for introducing drugs into the jail, he

was removed from his cell, Defendant conducted a body scan on Plaintiff, Defendant observed

what he believed to be a mass inside of Plaintiff's body, Defendant transported Plaintiff to the

hospital and an x-ray was taken, the x-ray revealed no objects in Plaintiff's body, and Dr. Diaz

conducted a rectal search of Plaintiff and nothing was found.

For purposes of summary judgment, the parties dispute centers on two main issues: (1)

whether Defendant ordered the rectal search to occur; and (2) whether there was a legitimate

reason to conduct the search. The Court considers each of these issues in turn.

To prove that Defendant sexually assaulted him, Plaintiff must show that Defendant was

responsible for the decision to conduct the rectal search. *See Thompson v. Ferrso*, No. CV 20-

8241-SVW (KS), 2021 WL 4456963, at *6 (C.D. Cal. May 26, 2021) ("To establish a defendant's

liability under § 1983, a plaintiff must allege sufficient facts to show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation."). On this issue, Plaintiff points to two undisputed facts from the record: (1) Defendant made a statement that Dr. Liu needed to "clear" Plaintiff;[7] and (2) Defendant obtained a search warrant that authorized a rectal search.

Defendant counters that "to clear" an inmate in this context means to ensure that the inmate is medically able to return to the jail (as opposed to being a directive to conduct a rectal search). Defendant acknowledges that he obtained a warrant that authorized a rectal search, but he maintains that he never ordered any medical professional to conduct the search; rather, it was Dr. Liu who decided to conduct the search because, even though the x-ray was clear, an x-ray is not conclusive as to the presence of drugs.

Defendant points to various parts of the record to support his position. First, Defendant provides his own declaration that it is a policy of the Tulare County Sheriff's Office "to ensure inmates are cleared by medical personnel before they are returned to jail" and "[t]he process of clearing an inmate involves a medical professional determining there are no medical needs preventing a person from returning to jail." (ECF 68-2, p. 133). Further, he contends that "Dr. Liu . . . made the decision that a body cavity search on Hounihan was necessary" and Defendant "did not order any doctor, medical professional, or any other person, to touch Hounihan in a sexual manner or otherwise direct their interaction with Hounihan." (*Id.* at 133-34).

Additionally, Defendant supports his argument with the declaration of Lieutenant Cory S. Jones, an administrative commander with the Tulare County Sheriff's Office who assists with oversight of jail medical and mental health issues.

> Once an inmate is seen, or treated, by a medical professional at the medical facility, then the transporting deputy must obtain what we call clearance paperwork by the treating medical professional. This medical clearance ensures the inmate is cleared to safely return to custody without the need for further immediate medical treatment. Upon returning the inmate to custody, the transporting deputy then gives the medical clearance paperwork to our medical provider, which is currently Wellpath.

---

[7] Defendant's deposition states that he does not remember telling Dr. Liu to "clear" Plaintiff, but he "concede[s] that [he] may have said something to this effect since it is the policy of TCSO to ensure inmates are cleared by medical personnel before they are returned to jail." (ECF No. 68-2, p. 133).

11

This procedure, while not written down, is necessary to ensure the medical needs of all inmates are being met while they are in the custody of TCSO.

(*Id.* at 137).

Further, Defendant provides excerpts from the deposition of Dr. Liu, who likewise supports Defendant's position.

Q. When a law enforcement officer asks for a patient to be cleared, do you know what that means, Doctor?

A. Yes. It means that we assess the patient and make sure that there's no emergent medical condition that requires further medical intervention.

(*Id.* at 78).

Moreover, Dr. Liu confirms that it was his decision to conduct the rectal search because, even though the x-ray was clear, an x-ray will not always reveal the presence of drugs.

Q. Can you give me an example [of things that would not show up on an x-ray]?

A. Well, for example, a bag of fentanyl would not necessarily show up on an X-ray.

Q. Why not?

A. Because it is not radiopaque. It would be a powdery substance and would not be detected on an X-ray, which typically looks for metal or calcifications like bone.

Q. And just so I'm understanding you, what does radiopaque mean?

A. That means the substance is of sufficient density that the X-rays do not penetrate it and allows for visualization on the X-ray.

Q. Okay. So what happened after the X-ray was determined to be negative for foreign bodies inside Mr. Hounihan?

A. Well, it was negative for radiopaque foreign bodies, but it does not rule out the possibility of a nonopaque foreign body. So after that, a rectal exam was performed.

Q. Okay. So whose decision was it to conduct a rectal exam on Mr. Hounihan?

A. It was my decision.

. . . .

Q. Okay. And I just want to be clear, Doctor. Now, you said you were the one who made the decision to conduct the body cavity search on Mr. Hounihan; is that correct?

A. So my decision was to perform a rectal exam . . . . but in my emergent medical screening, I need to screen for life-threatening conditions. In this case, part of that screen involved doing a rectal exam for any foreign bodies.

Q. Okay. And even though the X-ray was clear, you made that determination?

12

A. Even though the X-ray said no radiopaque foreign bodies, I made the determination that there was still possibly other nonradiopaque foreign bodies that needed to be inspected.

(*Id.* at 74-75, 79-80).

Lastly, Defendant has submitted Plaintiff's discharge instructions from the hospital which support his contention that "clear" means to ensure an inmate is medically able to return to the jail: "You have been evaluated today for any illness or injury that may require special attention while you are in jail. It appears that your condition is stable at this time. You have been medically cleared for jail." (*Id.* at 85).

After considering the evidence, the Court concludes that Defendant has met his "initial responsibility of informing" the Court of those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Accordingly, the Court looks to see if Plaintiff has "designate[d] specific facts demonstrating the existence of genuine issues for trial" and whether Plaintiff's evidence could lead a jury to "reasonably render a verdict" in his favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

Plaintiff repeatedly asserts throughout his briefing that Defendant has already admitted liability, mainly through his affirmative defenses. For example, Plaintiff cites Defendant's nineteenth affirmative defense—"that at no time relevant to this litigation was the Due Process Clause of the United States Constitution implicated because the conduct of this Defendant was, at most, a mere negligent act of an official causing unintended loss of or injury to life, liberty or property"—and contends that this is an admission that Defendant was "negligent" and that he thus violated Plaintiff's constitutional rights. (ECF No. 52, pp. 20-21; *see* ECF No. 13, p. 6). Defendant responds that, "[c]ontrary to what Plaintiff believes, Defendant's Nineteenth defense is not an admission but an affirmative defense supported by case law." (ECF No. 78, p. 2). The Court agrees that none of Defendant's filings have admitted liability so as to warrant summary judgment in Plaintiff's favor.

Federal Rule of Civil Procedure 8(c) requires the affirmative pleading of . . . separate defenses, and of "any matter constituting an avoidance or affirmative defense." Historically, the rule is derived from the common law practice of confession and avoidance, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1270, at 289 (1969), and that derivation defines the function of the pleading. Affirmative defenses plead matters extraneous to the plaintiff's prima

13

facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true. *Gomez v. Toledo*, 446 U.S. 635, 640–41, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). As a general matter then, the pleading of an affirmative defense puts the plaintiff on notice that matters extraneous to his prima facie case are in issue and ordinarily allocates the burden of proof on the issue. *Kouba v. Allstate Ins. Co.*, 691 F.2d 873 (9th Cir.1982).

*Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987).

Simply put, Defendant's affirmative defenses are means to deny Plaintiff's right to a recovery in this case, even assuming that Plaintiff's allegations are true. Accordingly, where Defendant, for example, in his nineteenth defense contends that he was at most negligent, this is not an admission that he acted negligently in this case. Rather, this is Defendant's attempt to defend against a potential recovery by asserting that, even if Defendant were negligent, Plaintiff would not be entitled to a recovery.

Turning to the merits, while Plaintiff repeatedly asserts that Defendant's direction "to clear" him—combined with the fact that Defendant obtained a warrant permitting a rectal search—amounted to an order to conduct a rectal search, he fails to support his position with record evidence. For example, Plaintiff points to no evidence that "clear" in this context means to conduct a rectal search. Further, while it is true that Defendant obtained a warrant permitting a rectal search, Plaintiff offers no evidence to show that Dr. Diaz conducted the search because Dr. Diaz felt required to do so under the warrant or that Defendant otherwise directed him to conduct the search.

In short, Plaintiff's assertion that Defendant directed the rectal search relies on conjecture. However, Defendant's assertion that he did not order the search—rather, Dr. Liu did—is consistently supported by the record. Because Plaintiff has submitted no evidence that could reasonably support a jury finding in his favor, Defendant is entitled to summary judgment. Accordingly, the Court will recommend that Defendant's motion for summary judgment be granted and that Plaintiff's motion for summary judgment be denied.

### D.    Legitimate Penological Purpose

While there is no genuine dispute that Defendant did not order the rectal search, assuming that Defendant had done so, that would not end the matter. Importantly, to prevail, Plaintiff would have to also show that Defendant ordered the search for his own sexual gratification or for the

14

1    purpose of humiliating, degrading, or demeaning Plaintiff. *Bearchild*, 947 F.3d at 1144.

2        On this issue, Defendant has offered evidence that the events at issue were motivated by

3 legitimate penological concerns, including investigating the introduction of drugs into the jail as

4 well as safety concerns for Plaintiff. Notably, Defendant has provided his declaration, recounting

5 the overdose of inmates and evidence implicating Plaintiff, which culminated in the issuance of a

6 search warrant to try to find out if Plaintiff was involved. (ECF No. 68-2, p. 132); *see Bull v. City*

7 *& Cnty. of San Francisco*, 595 F.3d 964, 971 (9th Cir. 2010) (noting that a search policy, in place

8 to prevent the smuggling of drugs, furthered institutional security goals). Further, Dr. Liu testified

9 at his deposition that, even though the x-ray was clear, drugs do not always show up on an x-ray,

10 and the rectal search was conducted, in part, "to screen for life-threatening conditions." (ECF No.

11 68-2, pp. 74, 79-80). Plaintiff's own health and safety was another legitimate reason for the

12 search. *See Warsoldier v. Woodford*, 418 F.3d 989, 1000 (9th Cir. 2005) (noting that correctional

facilities have a compelling interest in protecting inmate health).

13        After considering the evidence, the Court concludes that Defendant has met his "initial

14 responsibility of informing" the Court of those portions of the record that "demonstrate the

15 absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Accordingly, the Court

16 looks to see if Plaintiff has "designate[d] specific facts demonstrating the existence of genuine

17 issues for trial" and whether Plaintiff's evidence could lead a jury to "reasonably render a verdict"

18 in his favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.

19        Plaintiff contends that unspecified "personal feelings" of Defendant motivated the search

20 and there was no reason for it because the x-ray revealed no foreign objects in his body. (ECF No.

21 61, pp. 4-6). However, Plaintiff has offered no competent evidence that Defendant directed the

22 rectal search for a sexual purpose; rather, Plaintiff simply attributes the search to Defendant's

23 own unspecified personal animus towards him.[8] Moreover, while Plaintiff contends that there was

24 no reason for the search because the x-ray was clear, as discussed above, Dr. Liu testified than an

25 [8] Plaintiff also provided a private investigator's report from his criminal case, which summarizes
interviews with the inmates who purportedly overdosed on drugs, with the inmates indicating that Plaintiff

26 was not the source of the drugs and that corrections officers, including Defendant, wanted them to
implicate Plaintiff. (ECF No. 75-1, pp. 8-11). Plaintiff uses this report to support his contention that the

27 search warrant was unlawfully obtained. (ECF No. 75, p. 7). Defendant counters that the investigator's
report is based on hearsay and the lawfulness of the search warrant is not at issue. (ECF No. 78, p. 4). The

28 Court agrees with Defendant that the validity of the search warrant is not before this Court.

1  x-ray is not conclusive as to the presence of drugs.

2        In short, Plaintiff fails to offer evidence that the rectal search was done for a sexual

3  purpose. Rather, the record evidence indicates that the search was carried out to promote jail

4  security and inmate health and safety. Because Plaintiff has submitted no evidence that could

5  reasonably support a jury finding in his favor, Defendant is entitled to summary judgment on this

6  basis as well.

7  **IV.    CONCLUSION AND RECOMMENDATIONS**

8        For the reasons explained above, IT IS RECOMMENDED that:

9        (1) Plaintiff's motion for summary judgment (ECF No. 52) be denied;

10        (2) Defendant's motion for summary judgment (ECF No. 68) be granted;

11        (3) Defendant's request for judicial notice (ECF No. 68-4) be denied;

12        (4) Plaintiff's objections to Defendant's declaration (ECF No. 64) be overruled;

13        (5) the sealed exhibits (ECF No. 75-1) be unsealed; and

14        (6) the Clerk of Court be directed to close this case.

15        These findings and recommendations are submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30)

17  days after being served with these findings and recommendations, any party may file written

18  objections with the Court. Such a document should be captioned "Objections to Magistrate

19  Judge's Findings and Recommendations." Any response to the objections shall be served and

20  filed within fourteen (14) days after service of the objections. The parties are advised that failure

21  to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*

22  *v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394

23  (9th Cir. 1991)).

24  IT IS SO ORDERED.

25  Dated:   **July 12, 2024**                    /s/ *Erica P. Grosjean*

26                                          UNITED STATES MAGISTRATE JUDGE

27

28
                                    16